UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
GREGORY B.,

                        Plaintiff,       <u>DECISION AND ORDER</u>
                                        7:23-cv-01011-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

    In April of 2021, Plaintiff Gregory B.[1] applied for Disability Insurance

Benefits under the Social Security Act. The Commissioner of Social

Security denied the application.  Plaintiff, represented by Osborn Law, P.C.,

Daniel Adam Osborn, Esq., of counsel, commenced this action seeking

judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§

405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a

United States Magistrate Judge. (Docket No. 8).

    This case was referred to the undersigned on May 5, 2024.  Presently

pending is Plaintiff's Motion for Judgment on the Pleadings under Rule 12

(c) of the Federal Rules of Civil Procedure. (Docket No. 14). For the

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

following reasons, Plaintiff's motion is due to be denied and this case is
dismissed.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on April 1, 2021, alleging disability
beginning April 30, 2021. (T at 61).[2]  Plaintiff's application was denied
initially and on reconsideration.  He requested a hearing before an
Administrative Law Judge ("ALJ").  A hearing was held on February 3,
2022, before ALJ Brian Lemoine. (T at 28-58). Plaintiff appeared with an
attorney and testified. (T at 35-53). The ALJ also received testimony from
Edmond Calandra, a vocational expert. (T at 54-57).

### B.    ALJ's Decision

On March 9, 2022, the ALJ issued a decision denying the application
for benefits. (T at 7-24).  The ALJ found that Plaintiff had not engaged in
substantial gainful activity since April 30, 2021 (the alleged onset date) and
meets the insured status requirements of the Social Security Act through
December 31, 2025 (the date last insured). (T at 12).

The ALJ concluded that Plaintiff's obesity, post-traumatic arthritis of

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 11.

the right shoulder following multiple surgeries, and chronic pain syndrome of the right shoulder were severe impairments as defined under the Act. (T at 13).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 15).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b), with the following limitation: he cannot perform more than occasional reaching in all directions with his upper right dominant extremity. (T at 16).

The ALJ concluded that Plaintiff could not perform his past relevant work as a corrections officer, fire fighter, fire fighter lieutenant, or public safety dispatcher. (T at 18).

However, considering Plaintiff's age (44 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 19).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits

for the period between April 30, 2021 (the alleged onset date) and March 9, 2022 (the date of the ALJ's decision). (T at 20).  On December 5, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

### C.    Procedural History

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on February 7, 2023. (Docket No. 1).  On September 10, 2023, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 14, 15).  The Commissioner interposed a brief in opposition to the motion and in support of the denial of benefits, on November 3, 2021. (Docket No. 16).  On November 28, 2023, Plaintiff submitted a reply memorandum of law in further support of his motion. (Docket No. 17).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### III.  DISCUSSION

Plaintiff raises two prinmary arguments in support of his request for reversal of the ALJ's decision.  First, he challenges the ALJ's step two analysis of his mental impairments.  Second, Plaintiff argues that the ALJ failed to adequately develop the record.  This Court will address both arguments in turn.

### A.    Step Two Analysis

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic

work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." *Gibbs v. Astrue*, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l) (5).

Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y.1995).

Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)).

In the present case, the ALJ concluded that Plaintiff's obesity, post-traumatic arthritis of the right shoulder following multiple surgeries, and chronic pain syndrome of the right shoulder were severe impairments. (T at

13).  The ALJ recognized Plaintiff's depression, anxiety, and post-traumatic stress disorder as medically determinable impairments, but found that they did not cause more than minimal limitation in his ability to perform basic mental work activities and were therefore non-severe impairments. (T at 13).

The Commissioner uses a "special technique" to evaluate the severity of mental impairments at step two of the sequential analysis. *See* 20 C.F.R. § 404.1520a(a).  The ALJ rates the degree of functional limitation resulting from the claimant's mental impairment(s) to determine whether the impairment(s) is/are "severe." *See id*. at § 404.1520a(d)(1).

To perform this analysis, the ALJ considers the degree of limitation in four (4) broad functional areas – understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  If the limitation in these domains is no more than "mild," and if the evidence does not otherwise indication more than a mild limitation in the claimant's activity to perform basic work activities, then the mental impairment(s) will be considered non-severe. *See id.*

Here, the ALJ determined that Plaintiff had mild limitation in understanding, remembering, or applying information; mild limitation in

interacting with others; no limitation with respect to concentration, persistence, or pace; and mild limitation in adapting or managing himself. (T at 13-14).

Plaintiff challenges the ALJ's assessment of his ability to interact with others and his capacity to adapt or manage himself.  For the reasons that follow, the Court finds the ALJ's decision supported by substantial evidence.

The ALJ's findings are supported by a reasonable reading of the record and consideration of the medical opinion evidence.

Dr. Alison Murphy performed a psychiatric consultative evaluation in June of 2021.  On examination, Plaintiff was cooperative, with adequate social skills, good insight and judgment, intact attention and concentration, and mildly impaired memory skills. (T at 525-26).

Dr. Murphy opined that Plaintiff had mild limitation in his ability to interact adequately with supervisors, co-workers, and the public and mild impairment in his ability to sustain an ordinary routine and regular attendance. (T at 527).  She noted that Plaintiff appeared to have psychiatric problems, but believed they were not significant enough to interfere with his ability to function on a daily basis. (T at 527).

Dr. J. Ochoa, a non-examining State Agency review consultant, assessed mild limitation in Plaintiff's ability to interact with others; sustain concentration, persist, or maintain pace; and adapt or manage himself. (T at 66).  Dr. Y. Sherer, another State Agency consultant, reached the same conclusion. (T at 83).

Dr. Mark Bernstein, Plaintiff's treating psychiatrist, completed a medical source statement in July of 2021.  He opined that Plaintiff had no limitations with respect to following work rules; dealing with the public; using judgment; functioning independently; maintaining attention and concentration; understanding, remembering, and carrying out simple or complex job instructions; behaving in an emotionally stable manner; relating predictably in social situations; and demonstrating reliability. (T at 591).  He noted, however, that "[w]ork stresses can [increase] anxiety." (T at 590).

Using a pre-printed ratings form, Dr. Bernstein indicated that Plaintiff's ability to relate to co-workers and supervisors was "good" and opined that his capacity to deal with work stresses was "fair." (T at 590). Plaintiff says that, per the definitions supplied by the form, use of the terms "good" and "fair" implies greater than mild limitation in these domains. Thus, Plaintiff contends, the ALJ's assessment of no more than mild

impairment with respect to the domains of social interaction and adapting or managing oneself is contracted by Dr. Berstein.

The Court concludes that Plaintiff's argument is unavailing.

The form Dr. Bernstein completed defines "good" as meaning that the ability to function in the designated area is "limited *but satisfactory*" and defines "fair" as meaning that the ability to function is "seriously limited, *but not precluded*." (T at 590)(emphasis added).

In addition, Dr. Berstein rated Plaintiff's ability to make personal-social adjustments, including the capacity to relate predictably in social situations, as "unlimited or very good." (T at 591).  The form defined this rating as having an ability to function that is "more than satisfactory." (T at 590).

Given these definitions and considering Dr. Berstein's opinion as a whole, it was not unreasonable for the ALJ to find Dr. Berstein's opinion consistent with no more than mild limitation.

Moreover, even if Dr. Berstein's opinion is read in the more restrictive manner urged by Plaintiff, substantial evidence still supports the ALJ's assessment of no more than mild limitation.  As noted above, the ALJ's conclusion is supported by the opinions of Dr. Murphy, Dr. Ochoa, and Dr. Sherer. (T at 66, 83, 527).

In addition, while Plaintiff testified that he was concerned about work stress and "never liked crowds," he reported no problems relating to the public, co-workers, or supervisors. (T at 49).  Although Plaintiff had few friends and experienced moments of hypervigilance and detachment, he had strong relationships with family members and was independent with self-care, could perform household chores, and was able to shop in stores. (T at 13, 525-26).

For these reasons the Court finds the ALJ's step two assessment of Plaintiff's ability to meet the mental demands of basic work activity supported by substantial evidence. *See DuBois v. Comm'r of Soc. Sec*., No. 20-CV-8422 (BCM), 2022 WL 845751, at *8 (S.D.N.Y. Mar. 21, 2022)("To be sure, there is some evidence in the record that would support the conclusion that plaintiff had greater limitations than those the ALJ built into her RFC. But that is not the test."); *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) ("The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude* otherwise.")(emphasis in original) (citation and internal quotation marks omitted).

B.    *Duty to Develop the Record*

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted). This obligation applies even if the claimant is represented by counsel. *See, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

The ALJ's duty to develop the record has been described as a "bedrock principle of Social Security law." *Batista v. Barnhart*, 326 F.Supp.2d 345, 353 (E.D.N.Y.2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir.1999)).

In the present case, Plaintiff argues that the ALJ did not adequately develop the record because he did not (1) order a consultative orthopedic examination or (2) obtain treatment notes from a treating therapist.

1.    *Consultative Orthopedic Evaluation*

The ALJ found that Plaintiff's post-traumatic arthritis and chronic pain syndrome of the right shoulder were severe impairments. (T at 13).  The ALJ concluded that Plaintiff retained the RFC to perform light work but was limited to only occasional reaching with his right upper extremity. (T at 16).

14

Plaintiff argues that the ALJ erred by making this assessment without obtaining a consultative examination from an orthopedist.

"A consultative examination is used to 'try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision' on the claim." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013)(quoting 20 C.F.R. §§ 404.1519a(b), 416.919a(b)).

The administrative record needs to be further developed if "it does not contain all of the information [ ] need[ed] to make [a] determination or decision." 20 C.F.R. § 404.1520b(b). However, "an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it." *Tankisi*, 521 F. App'x at 32; *see also Villalobo v. Saul*, No. 19-CIV-11560CSJCM, 2021 WL 830034, at *19 (S.D.N.Y. Feb. 9, 2021).

Here, the record is sufficient to sustain the ALJ's decision without a consultative examination from an orthopedist.

The record contains extensive treatment notes, including physical examinations showing tenderness along the lateral and anterior shoulder and pain with range of motion, but no loss of muscle strength. (T at 486-87, 496-97, 508-15, 513-14, 579-89)  In March of 2021, Plaintiff reported

persistent pain, but had "effective and functional [range of motion] of [right] shoulder." (T at 511).

The record also contains multiple medical opinions regarding Plaintiff's functional limitations.

In February of 2021, Dr. Russell Warren, a treating sports medicine physician, reported that Plaintiff had limited range of motion of the right shoulder and a "little bit" of tenderness, but "pretty good strength," with pain "significantly improved." (T at 561).  He opined that Plaintiff would likely not be "able to resume full time duty in terms of use of a gun and overhead work," but he did believe "desk work would be possible …." (T at 561).

The non-examining State Agency medical consultants, Dr. J. Sharif-Najaki and Dr. K. Waldman, M.D., found Plaintiff capable of light work with limited reaching with the right upper extremity: Dr. Sharif-Najaki assessed limitations for occasional overhead reaching, while Dr. Waldman also found limitations with respect to frequent front and lateral reaching. (T at 68-72, 86-89).

Dr. Kautilya Puri, a neurologist, performed a consultative examination in June of 2021.  On examination, Plaintiff had decreased range of motion in the right shoulder, but full strength in the upper extremities and no sensory deficits or muscle atrophy. (T at 533).  Dr. Puri opined that Plaintiff

had moderate limitation with respect to overhead reaching and lifting weights. (T at 534).

Dr. Puri also suggested that Plaintiff "be seen by an orthopedic doctor." (T at 534).  Plaintiff argues that this constituted a recommendation that another consultative examination be performed by an orthopedist. However, in context, it appears Dr. Puri was making a treatment recommendation, rather than indicating that he felt he could not adequately assess Plaintiff's functional limitations (which his report thoroughly does).

Dr. Bindu Pathrose, a treating pain management physician, declined to provide an assessment of Plaintiff's functional limitations, stating that Plaintiff needed a functional capacity evaluation to make such an assessment. (T at 574).

Plaintiff points to this statement as evidence that further development of the record was needed.  Notably, however, Dr. Puri performed a functional capacity evaluation at the request of the Commissioner and there is no indication that Dr. Pathrose believed the evaluation could only be appropriately performed by an orthopedist.

In any event, even if the statements by Dr. Puri and Dr. Pathrose are interpreted as recommendations for an orthopedist to perform a consultative examination, the ALJ was under no further obligation to

develop the record, which (as outlined above) contains extensive treatment notes and multiple detailed medical assessments, which the ALJ reasonably relied on in formulating the RFC. *See Francisco v. Comm'r of Soc. Sec.*, No. 13CV1486 TPG DF, 2015 WL 5316353, at *11 (S.D.N.Y. Sept. 11, 2015)("[A]n ALJ is not required to attempt to obtain additional evidence to fill *any* gap in the medical evidence; rather an ALJ is required to do so only where the facts of the particular case suggest that further development is necessary to evaluate the claimant's condition fairly." (emphasis in original); *see also Sampson v. Saul*, No. 19CIV6270PAESN, 2020 WL 6130568, at *6 (S.D.N.Y. Oct. 16, 2020).

2.    *Therapist Records*

Dr. Murphy noted that Plaintiff reported participating in therapy sessions for depression and anxiety with Jennifer Candela, a social worker. (T at 524).  The record, however, does not contain an assessment from Ms. Candela or copies of her therapy notes.  Plaintiff argues that the ALJ erred by failing to obtain this information.

When asked at the administrative hearing whether the record was complete, Plaintiff's counsel identified outstanding reports from Dr. Bernstein and Dr. Warren, and the ALJ agreed to hold the record open to allow counsel time to obtain the documents and supplement the record. (T

at 33-34). Counsel stated that the record was otherwise complete. (T at 34-35). In February of 2022, counsel submitted the records and confirmed that no further records were outstanding. (T at 343).

Based on the foregoing, the Court has no trouble concluding that the ALJ satisfied his duty to develop the record. *See Torres v. Colvin*, No. 12 CIV. 6527 ALC SN, 2014 WL 4467805, at *6 (S.D.N.Y. Sept. 8, 2014)("Because the record was held open and Plaintiff failed to provide supplemental evidence, the ALJ fulfilled his duty to develop the record."); *Perry v. Saul*, No. 19-CV-525F, 2020 WL 5544347, at *5 (W.D.N.Y. Sept. 16, 2020)("An ALJ … does not err in failing to develop the record where the claimant's counsel advises she is seeking the missing records, the ALJ keeps the administrative record open to allow for supplementation, but counsel never submits the additional records, and the claimant never requests the ALJ's assistance in obtaining the records."); *Regino v. Comm'r of Soc. Sec*., No. 20CV8518RABCM, 2022 WL 4369919, at *14 (S.D.N.Y. Aug. 31, 2022), *report and recommendation adopted sub nom. Regino v. Comm'r of Soc. Sec. Admin*., No. 20-CV-8518 (RA), 2022 WL 4368187 (S.D.N.Y. Sept. 21, 2022)("It was not error, under these circumstances, for the ALJ to take the representative at her word.").

In addition, and in the alternative, the record regarding Plaintiff's mental impairments was well-developed, including treatment notes and an assessment from the treating psychiatrist (Dr. Bernstein), a consultative psychological evaluation (Dr. Murphy), and two State Agency review opinions (Dr. Ochoa and Dr. Sherer).  Thus, the ALJ had sufficient information to fairly assess the impact of Plaintiff's mental impairments on his ability to meet the mental demands of basic work activity. *See Clarke v. Comm'r of Soc. Sec*., No. 19-CV-7213 (BCM), 2021 WL 2481909, at *13 (S.D.N.Y. June 16, 2021)(noting that the ALJ's "obligation to assemble the claimant's medical records, although robust, 'is not unlimited.''(quoting *Myers ex rel. C.N. v. Astru*e, 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012)).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED, and this case is DISMISSED. The Clerk is directed to enter final judgment in favor of the Commissioner and then close the file.

Dated: May 17, 2024                         *s/ Gary R. Jones*
                                            GARY R. JONES
                                            United States Magistrate Judge